18393

Doris E. PICKENS, Respondent, v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, Appellant

(144 S. E. (2d) 68)

*Messrs. Grier, McDonald, Todd, Burns & Bradford* and
*Judson F. Ayres, Jr.,* of Greenwood, *for Appellants,*

*Messrs. Callison & Dorn,* of Greenwood, *for Respondent,*

August 25, 1965.

BUSSEY, Justice.

In this action respondent, as named beneficiary, sought to recover a death indemnity benefit in the amount of $10,000 provided for in an automobile liability policy issued by the appellant to the husband of respondent, one Calvin Keith Pickens, who will hereinafter be referred to simply as Pickens. The said Pickens came to his death by accidental means at about 1 A. M. on Sunday, March 12, 1961, and the complaint alleged that the aforesaid policy was in full force and effect at that time. The answer of appellant denied that said policy was in force, and alleged that it expired by its terms at 12:01 A. M. March 2, 1961, for nonpayment of premiums. The trial judge overruled motions of the appellant for nonsuit and a directed verdict, and also overruled a motion of respondent for a directed verdict in her favor.

The jury returned a verdict favorable to respondent, and the trial judge thereafter overruled appellant's motion for judgment *non obstante veredicto,* or in the alternative for a new trial.

The appellant states and argues six questions on appeal, based on several exceptions. Although appellant made a motion for a new trial in the alternative, and one of its exceptions here imputes error with respect to the charge of the trial judge, appellant, in its brief, does not contend that it is entitled to a new trial. The questions as stated and argued by appelant actually raise only the single question of whether or not the trial judge should have granted either a nonsuit or a directed verdict in its favor. Such being the only issue before us, it is elementary that all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the respondent. There is no dispute about the facts of the case since the appellant offered no evidence. Our consideration is thus narrowed to the inferences reasonably deducible from the established facts.

Pickens had carried his automobile liability insurance with the appellant since the year 1954, doing business with an agent of the appellant, one Gilreath, in Greenwood, South Carolina. At the time of his death, Pickens was residing at New Ellenton, but was still getting mail from appellant at Route 4, Greenwood, South Carolina, apparently the address of Pickens' mother, who would forward his mail on to him at New Ellenton. The insurance policy involved in this case was issued for a period from May 21, 1960 to September 2, 1960, and contained, *inter alia,* the following provisions:

"The policy period shall be as shown under 'Policy Period' and for such succeeding periods of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current policy period. The 'Policy Period' shall begin and end at 12:01

A. M., standard time at the address of the named insured as stated herein. The premium shown is for the policy period and coverages indicated on Page One."

Pickens did not pay the premium which became due on September 2, 1960, on time, but did, on September 22, 1960, pay a reduced, apparently pro-rated, premium which renewed the policy from the date of the premium payment to March 2, 1961. No coverage was afforded Pickens for the twenty day period of September 2, 1960, to September 22, 1960.

During the early part of February, 1961, appellant sent Pickens a premium notice reminding him that another premium in the amount of $35.80 would be due on March 2, 1961. This notice made no mention of the fact that the policy by its terms would expire at 12:01 A. M. on that date. Pickens did not pay the premium in response to this notice, and thereafter, on or about March 2, appellant mailed him another notice which was entitled "Expiration Notice". The exact date that this notice was mailed does not appear of record, but it was first seen by Pickens on March 8th when he took his mother home from a visit to New Ellenton. This notice was in the automobile of Pickens at the time of his death. On this notice the words, "Expiration Notice" were in bold black print and immediately following those words in smaller and less bold print were the words, "Your policy expired at 12:01 A. M. on due date." The notice was composed of two parts; one to be retained by Pickens, and a stub for detaching and returning to appellant with the premium. Both parts of the notice showed the policy due date as being simply March 2, 1961, and the stub designed for return to appellant contained no mention of the minute, as opposed to the date, of the expiration of the policy. At the top of the stub is the following language, "Payment within ten days of due date will renew your policy and provide continuous protection."

The other portion of the notice contained the same language followed by, "Keep this part of notice as your record."

On Monday, March 13, 1961, the day following the insured's death, a brother-in-law of Pickens offered to pay the premium due to appellant's agent, but this offer was declined, the agent stating that if tender had been made at any time on Sunday, March 12th, it would have been in time and he would have accepted it, but that Monday, March 13th, was too late and he would not accept it.

The respondent testified that Pickens had received similar premium notices and expiration notices from appellant from time to time in previous years, and it appears obvious from the record that such expiration notices were sent regularly to the policy holders of appellant when their premiums had not been paid on or before the due date mentioned in its premium notices. While not important to the decision of the case, respondent also testified to the effect that Sunday night was the time that Pickens normally wrote checks and paid his currently due bills.

Substantially, the only question submitted to the jury by the trial judge was, whether the course of dealings between the parties, and the expiration notice hereinabove referred to, led Pickens to believe that he had through March 12th, 1961, within which to pay the premium. Since, however, the only issue before us on appeal is the contention that the case should not have been submitted to the jury at all, we do not need to discuss either the judge's charge or whether he submitted the case to the jury on precisely the right theory. We think there was no error on the part of the trial judge in refusing appellant's motions for nonsuit and directed verdict.

The policy here, while for a specific term or period initially, was by its terms renewable, for successive policy periods, simply by the payment of a renewal premium. Although the period of the policy, as previously renewed, expired at 12:01 A. M. on March 2nd, both notices showed the due date of the premium as being simply March 2, and not any precise moment on March 2nd. The facts are

clearly and readily susceptible of the inference that there was an intent and practice on the part of the appellant to accept any premium due, if such be paid within ten days of the due date, which here would have included March 12th, without any interruption of protection, and that it would accept payment more than ten days after the due date, but would, in such event prorate the premium and afford no coverage between the due date and the date of payment.

An insurer clearly has the right to extend the time for the payment of any premium due it. Such may be done by the insertion of a provision in the policy itself, or by the separate act of the insurer. In 44 C. J. S. Insurance § 286, p. 1134, it is stated,

"Thus the payment of a renewal premium is not necessary to render a renewal contract valid or effective in the first instance, unless made a condition precedent, and even then it may be waived by extension of credit or otherwise, * * *.

"* * * Where the company waives payment of the premium before assuming liability, and the contract is otherwise complete, subsequent payment of the premium is a matter of performance, rather than a condition, of the contract."

Contrary to the contention of the appellant that the expiration notice was merely an offer to renew, which required the acceptance of Pickens during his lifetime, we think the language of the notice is indicative of an intention on the part of the appellant to give Pickens through March 12 to pay the premium, and to afford him continuous protection in the meantime, provided the premium be paid within the time allowed. If appellant did not so intend, why the repeated reference to "continuous protection"? If appellant had the right to deny coverage as to a loss occurring within the ten day period, simply because the insured had not yet paid the premium, then it would seem to follow, as the night the day, the insured would not be afforded "continuous protection", even though the premium was paid or tendered, after the loss, but within the ten day period.

A grace period for the payment of a premium due an insurer is at least normally intended for the benefit of both the insurer and the insured. By such a grace period the insured is given an additional time within which to pay the premium, and, in the meantime, afforded continuous protection. It is intended to benefit the insurer, in that it hopes thereby to keep the policy indefinitely in force and collect not only the premium then due but those to become thereafter due. We think that a fair and reasonable construction of the expiration notice, in the light of the course of dealing between the parties, is that it obligated the insurer to accept payment of the premium for a new policy period, if tendered within ten days of March 2, and to provide continuous coverage from the expiration of the prior policy period. The obligation, although couched in somewhat different language, means the same thing as the policy clause in *Surety Indemnity Company v. Estes,* 243 S. C. 593, 135 S. E. (2d) 226, which provided that the insurance, which was for a definite term might be "continued in force for successive policy periods by the payment of the required renewal premium * * * within thirty days after the beginning of such period." When a loss occurred during the thirty day period (after the expiration of the preceding policy period and before the payment of the premium falling due on the last day of that period), we held:

"* * * When this loss occurred, the insured had the absolute right to continue the policy for a six months period retroactive to November 18, 1962, by timely payment of the required premium * * *.

"* * * This clearly contemplates a continuing policy rather than successive, new and independent contracts. 29 Am. Jur., Insurance, Sec. 716. The question, then, is not whether the insured has acquired rights under a new contract by the acceptance of an offer to renew, but whether he has forfeited his rights under a contract of insurance which had been in existence since May 18, 1961, and under which a claim had arisen. * * *" 135 S. E. (2d) 227, 228.

Since March 12, the last day on which payment of the premium would be effective to provide continuous coverage fell on Sunday, tender of the premium the following day was in time and effective. *Linfors v. Unity Life Ins. Co.,* 189 S. C. 527, 1 S. E. (2d) 781.

For the purpose of decision of the only issue on this appeal, it is not necessary that the construction hereinabove given to the notice be the only reasonable construction thereof. It is sufficient that such is a reasonable construction, since appellant was not entitled to either a nonsuit or directed verdict, unless the facts, and the only reasonable construction of the notice, would lead to no other reasonable conclusion than that the policy was not in force and effect, under any theory of law, at the time of Pickens' death.

Furthermore, if the actual intent of the appellant was not in accord with our construction of the notice, then, to say the least, the language of the notice, coupled with the established course of dealings on the part of the appellant, was such as to naturally induce the belief in Pickens' mind that he had through March 12th within which to pay the premium without adversely affecting his coverage.

In *Welch v. Missouri State Life Ins. Co.,* 176 S. C. 494, 501, 180 S. E. 447, this court quoted with approval from 32 C. J. 1347, the following language:

"A forfeiture for nonpayment of premium is not favored in the law, and the courts are prompt to seize upon circumstances which indicate an election to waive the forfeiture. So the company cannot insist upon a provision of forfeiture upon nonpayment of premiums when due when its course of dealing has been such as to induce the belief in insured that the condition will not be insisted upon, as where it has been its custom to receive premiums after they are due."

For the foregoing reasons, we think there was no error in refusing appellant's several motions for judgment in its favor.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.