No. 45,601

ROBERT L. BRAMLETT and CAROL B. BRAMLETT, a minor, by Robert L. Bramlett, her natural guardian and next friend, *Appellants,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee.*

(468 P. 2d 157)

Opinion filed April 11, 1970.

*Robert L. Boyce, Jr.,* of Kansas City, argued the cause and was on the brief for appellants.

*J. Milton Sullivant,* of Sullivant & Smith, of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought by an insured father and daughter against their insurance company on the medical payments coverage provided in their automobile policies. The case was submitted on a stipulation of facts and on opposing motions for summary judgment. Judgment was entered in favor of the insurance company and this appeal followed.

The daughter, Carol B. Bramlett, a minor, resides with her father, Robert L. Bramlett. The father owns a 1964 Pontiac automobile and a 1956 Ford pickup truck. These vehicles were insured by State Farm Mutual Automobile Insurance Company (the insurance company). Separate policies were issued and they provided medical payments coverage of $1000 to Robert Bramlett and members of his household who might sustain bodily injury caused by accident while occupying or through being struck by the owned automobile, or any other motor vehicle.

The daughter, Carol B. Bramlett, purchased a 1962 Chevrolet automobile on December 20, 1965, and on that day she purchased identical insurance coverage from the insurance company. Her father paid the premium and both Carol and her father were the "named insured" under this policy. All three policies were identical in medical coverage and in the wording of the policies.

Three months later on March 15, 1966, Carol Bramlett was injured while riding as a passenger in the 1962 Chevrolet. Medical expenses were incurred on behalf of Carol as a result of this accident in the amount of $1880.32. A claim for the total amount was filed in court against the insurance company based upon the medical coverage in all three policies. While the claim was pending in court the insurance company paid $1000 on the claim under the 1962 Chevrolet policy without prejudice to the rights of either party. $880.32 and possible attorney fees remain at issue in this case.

At the outset we point out all parties concede that material changes were made in the form of policies issued by this insurance company after our decision in *Lavin v. State Farm Mutual Automobile Ins. Co.,* 193 Kan. 22, 391 P. 2d 992. It is further conceded these changes in the present policies make the law declared in *Lavin* inapplicable to the present case. We are not called on to decide the effect of any such policy changes and we express no opinion thereon in this case.

The thrust of the appellants' (Robert L. and Carol B. Bramlett's) argument is that the provision giving automatic coverage to newly acquired automobiles in the Ford and Pontiac policies applies to the 1962 Chevrolet as a newly acquired automobile.

The Ford and Pontiac policies provide $1000 medical payments coverage to the named insured and relatives residing in the household while occupying or being struck by the "owned automobile". Under the definition section of the policies "owned automobile" means the automobile described in the policy, and includes a tem-

porary substitute automobile and a "newly acquired automobile". Therefore, if the 1962 Chevrolet is a "newly acquired automobile" it comes within the definition of the "owned automobile" and medical coverage is provided by the Ford and Pontiac policies in excess of that listed in the Chevrolet policy.

The pertinent provision in the definition section of these policies reads as follows:

"Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (2) the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile. *If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply.* The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Emphasis supplied.)

The insurance company's counter contention is that the purpose of the automatic coverage clause is to give the insured 30 days interim protection on any new car acquired in order to afford him a reasonable opportunity to acquire insurance coverage on the new car, and that once the insured does acquire specific coverage on the new car the automatic coverage provision is no longer applicable.

In construing an insurance policy a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished. (*Continental Casualty Co. v. Employers Mut. Casualty Co.,* 198 Kan. 93, 422 P. 2d 560.)

Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. (*Saul v. Saint Paul-Mercury Indemnity Co.,* 173 Kan. 679, 250 P. 2d 819.)

In Blashfield Automobile Law and Practice (Third Edition), Vol. 7, § 316.3, pp. 656, 657, it is said:

"An automatic insurance provision is for the benefit of the insured, and its purpose is to extend coverage to the person already insured with the company in question with respect to the operation or maintenance of another automobile acquired by him, which is not described in the policy, as a replacement for the automobile originally covered or as an additional automobile when the company insures all the automobiles of insured. Once specific insurance is purchased and the automobile becomes described in the policy, it is no longer a

'newly acquired automobile' but is a 'described automobile' and the terms and provisions under the 'automatic insurance' or 'newly acquired automobile' clause are no longer applicable."

The courts are not uniform in their decisions regarding the length of time this automatic coverage is afforded to a newly acquired automobile when a 30 day automatic coverage provision is construed. Appellants cite and rely on *Carey v. State Farm Mutual Insurance Company*, 247 F. Supp. 381 (1965), wherein it was held coverage under a policy issued on a previously owned automobile automatically applied to the newly acquired automobile and continued for the remaining policy period. The coverage continued after a separate policy was purchased and in effect on the newly acquired automobile. In that case an accident occurred two months after the automobile was acquired and separately insured. The policy covering the previously owned automobile required the named insured to notify the insurance company of the purchase within 30 days after title was acquired. The effect of the holding in *Carey* was to extend liability coverage under the policy on a previously owned automobile to an accident involving the newly acquired automobile. The policy issued on the newly acquired automobile was considered "other insurance" available to cover liability. Pro-rata recovery was allowed on the new policy in addition to recovery under the policy on the previously owned vehicle.

The appellee relies on *Cook v. Suburban Cas. Co.*, 54 Ill. App. 2d 190, 203 N. E. 2d 748. In *Cook* the court said:

"Since the purpose of the 'automatic insurance clause' or 'newly acquired automobile clause' is to provide insurance coverage where the owned automobile is not described in the contract [citing cases] once specific insurance is purchased and the automobile becomes described in a policy, the automobile is no longer a 'newly acquired automobile' but is then a 'described automobile' and the terms and provisions under the so-called 'automatic insurance clause' or 'newly acquired automobile clause' is no longer applicable." (203 N. E. 2d 751.)

We are more impressed with the reasoning of the Illinois court in construing the "newly acquired automobile clause". The intention of the parties and the purpose sought to be accomplished as expressed by the wording of the policy was given effect to arrive at the decision.

In *Carey v. State Farm Mutual Insurance Company*, supra, the court's reasoning is difficult to follow. The court begins by assuming the insurance company did not intend to afford the coverage.

It indicates the insured did not intend to purchase the double liability coverage. Then, to arrive at its ultimate decision the court finds the intention of the parties was clear, no ambiguity existed, and the coverage was intended and purchased. It is difficult to see how the result reached by the court in that decision could have been influenced by any consideration of the intention of the parties.

In ascertaining and enforcing the intention of the parties to an insurance contract courts should not add terms, conditions or coverage which were never contemplated or agreed upon by the parties. If the language in the policy is clear and unambiguous it should be taken in its plain, ordinary and popular sense.

The purpose of the "automatic insurance clause" or "newly acquired automobile clause" in an automobile policy is to provide insurance coverage when an owned automobile is not described in a policy. When specific insurance is purchased and a separate policy is issued on the automobile it becomes an automobile described in a new policy and it is no longer a "newly acquired automobile". At that time the terms and provisions of the "automatic insurance clause" or "newly acquired automobile clause" are no longer applicable to the automobile.

In the present case the district court correctly held the 1962 Chevrolet was not a "newly acquired automobile" under the Ford and Pontiac policies when the insured acquired specific insurance on the 1962 Chevrolet automobile.

The judgment is affirmed.