996 F.2d 246
 Vicki Jo BARNARD, as personal representative of Estate of
James W. Barnard, deceased, Plaintiff-Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY; Associated Aviation
Underwriters, Defendants,
Avemco Insurance Company, a Maryland corporation,
Defendant-Appellee.
AVEMCO INSURANCE COMPANY, a Maryland corporation, Plaintiff-Appellee,
v.
Vicki Jo BARNARD, personal representative of the Estate of
James W. Barnard, deceased, Defendant-Appellant,
Fireman's Fund Insurance Company; Associated Aviation
Underwriters; Miriam M. Packard, as personal
representative of the Estate of Glenn D.
Packard, Defendants.
 No. 92-1342.
 United States Court of Appeals,
Tenth Circuit.
 June 21, 1993.
Rehearing Denied Sept. 7, 1993.
 
 Gerald C. Sterns and Dennis R. Lods, of Sterns, Walker & Lods, San Francisco, CA, for plaintiff-appellant.
 Jeffrey J. Cowman and Catherine A. Tallerico, of Fowler, Schimberg & Cowman, Denver, CO, for defendant-appellee.
 Before SEYMOUR and TACHA, Circuit Judges, and ROGERS,* Senior District Judge.
 SEYMOUR, Circuit Judge.
 
 
 1
 Plaintiff Vicki Barnard instituted a declaratory judgment action against defendant Avemco Insurance Company contending that an insurance policy issued by Avemco to plaintiff's deceased husband, James W. Barnard, covered the aircraft in which he was killed when it crashed. The district court entered summary judgment for Avemco. Plaintiff appeals and we reverse.[1]
 
 I.
 
 2
 Avemco issued a policy of insurance covering a Cessna 210 aircraft owned by James W. Barnard. The policy was issued for the period of September 23, 1985, through September 23, 1986. The Avemco policy describes "insured aircraft" as the Cessna 210, and
 
 
 3
 (b) a fixed wing aircraft of which you have acquired full ownership during the Policy Period as:
 
 
 4
 (i) a replacement for an aircraft shown in item 4 of the Data Page. You must notify us within 30 days of acquiring the aircraft;
 
 
 5
 (ii) an additional aircraft if we insure all aircraft you own. You must notify us within 10 days of acquiring the aircraft.
 
 
 6
 Aplt.App. at 56. This provision is commonly referred to as an "automatic insurance" provision covering newly acquired vehicles. The contested coverage here is for a newly acquired Cessna 340 aircraft, purchased by Mr. Barnard on August 21, 1986. The Cessna 340 crashed in Nevada on August 24, 1986, killing Mr. Barnard and his pilot, Glenn Packard.
 
 
 7
 Three days before the accident, on the date the new plane was purchased, Mr. Barnard contacted an agent with an insurance brokerage firm by telephone and secured an oral insurance binder on the Cessna 340 from Associated Aviation Underwriters (AAU), the aircraft agent for Fireman's Fund Insurance Company. At the close of the telephone conversation, the agent allegedly told Mr. Barnard that the Cessna 340 was insured, and that a written binder would be sent to him. Before the binder arrived, the Cessna 340 crashed and Mr. Barnard and Mr. Packard were killed.
 
 
 8
 Plaintiff brought suit against both Avemco and Fireman's Fund claiming coverage under both policies. Fireman's Fund denied coverage under the policy for which the binder was issued because of policy exclusions regarding the hours of flight time required of the pilot of the aircraft in the particular make and model of aircraft, and the requirement that the pilot of the aircraft be an actual employee of the aircraft owner. Mr. Packard, who was piloting the aircraft when it crashed, allegedly did not meet either of these requirements. Fireman's Fund moved for summary judgment on these grounds. The district court denied the motion, concluding that because the facts surrounding the issuance of the binder were in dispute, Fireman's Fund's liability could not be decided on summary judgment. This matter is scheduled for jury trial at a later time.
 
 
 9
 Plaintiff asserted that the unresolved question of coverage under the Fireman's Fund policy creates disputed issues of material fact as to coverage of the Cessna 340 under the Avemco policy's automatic insurance provision, thereby rendering inappropriate summary judgment in favor of Avemco. The district court did not agree. It held that the Cessna 340 was not an "additional aircraft" under the Avemco policy "because Barnard had insured the new plane with AAU by the oral binder." Aplt.App. at 133. As to the aircraft's qualification as a "replacement aircraft," the district court determined that Mr. Barnard's failure to "[make] any effort to dispose of the Cessna 210" during the ten-day grace period, coupled with his obtaining insurance on the Cessna 340 with a different company, precluded consideration of the Cessna 340 as a replacement aircraft. Id. at 133-34. Based on this rationale, and relying on Beck v. Aetna Casualty & Surety Co., 38 Colo.App. 77, 553 P.2d 397 (1976), the district court granted Avemco's summary judgment motion. It certified the judgment as final under Fed.R.Civ.P. 54(b). It is this judgment that is before us on appeal.
 
 II.
 
 10
 "We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)...." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citing Barnson v. United States, 816 F.2d 549, 552 (10th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law," Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991), but "we must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 11
 First, plaintiff argues that the Avemco policy provides coverage for a newly acquired aircraft during the notification grace periods of thirty days for a replacement aircraft and ten days for an additional aircraft regardless of whether Avemco was notified of the acquisition. Colorado law governs in this diversity case. However, the parties have cited no Colorado cases on this issue, and we have found none. Where no state cases exist on a point, we turn to other "state court decisions, federal decisions, and the general weight and trend of authority." Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir.1988).
 
 
 12
 The weight of authority from other jurisdictions addressing this issue, almost without exception, holds that in standard insurance policies, the "automatic insurance" clause extends coverage to the newly acquired vehicle during the grace period even if the insured did not notify the insurer of the replacement or addition. See, e.g., Republic Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 527 F.2d 1002, 1003-04 (4th Cir.1975) (requirement that insured apply for insurance on newly acquired vehicle within thirty days of acquisition was condition precedent only to coverage of vehicle subsequent to the thirty-day grace period); Inland Mut. Ins. Co. v. Stallings, 263 F.2d 852, 854 (4th Cir.1959) (automatic coverage in effect for newly acquired vehicle during grace period irrespective of notice); Hoffman v. Illinois Nat'l Casualty Co., 159 F.2d 564, 566 (7th Cir.1974) (same); Badger State Mut. Casualty Co. v. Swenson, 404 N.W.2d 877, 879 (Minn.Ct.App.1987) (notice requirement is condition subsequent, not affecting automatic coverage during grace period); Shelby Mut. Ins. Co. v. Kistler, 347 Pa.Super. 222, 500 A.2d 487, 489-90 (1985) (citing cases and joining majority of courts holding that coverage is automatic during notice period and only terminates if notice is not given by end of notice period); Annot., 34 A.L.R.2d 229 at § 23 (1985). But see Auto-Owners Ins. Co. v. Winter, 188 Mich.App. 230, 469 N.W.2d 314, 315 (1991) (holding that noncompliance with thirty-day notice requirement negates automatic coverage). We find persuasive those cases holding that automatic coverage extends during the grace period absent language in the policy to the contrary.
 
 
 13
 The fatal crash of the Cessna 340 occurred well within both notification periods in the Avemco policy. Consequently, we hold that the Avemco policy provided automatic coverage on the Cessna 340 as a replacement aircraft for thirty days after acquisition, or as an additional aircraft for ten days after acquisition, even without actual notice from Mr. Barnard.
 
 III.
 
 14
 Given automatic coverage during the grace period, the next question is whether Mr. Barnard's actions seeking an insurance binder from Fireman's Fund terminated Avemco's automatic coverage of the Cessna 340 as a newly acquired aircraft. In Beck, the Colorado case relied on by the district court, the Colorado Court of Appeals determined that a party owning two automobiles, one insured by a policy with high liability limits and the second insured with the same company by a policy with lower liability limits, cannot elect to have the second automobile insured by the higher liability policy under an "after acquired vehicle clause" in that policy. 553 P.2d at 399.
 
 
 15
 Although Beck is distinguishable from the instant case on its facts, it nevertheless found persuasive the following rationale of "automatic insurance" clauses set out in Bramlett v. State Farm Mutual Automobile Insurance Co., 205 Kan. 128, 468 P.2d 157 (1970):
 
 
 16
 "[T]o provide insurance coverage when an owned automobile is not described in a policy. When specific insurance is purchased and a separate policy is issued on the automobile it becomes an automobile described in a new policy and it is no longer a 'newly acquired automobile.' At that time the terms and provisions of the 'automatic insurance clause' or 'newly acquired automobile clause' are no longer applicable to the automobile."
 
 
 17
 Beck, 553 P.2d at 399 (quoting Bramlett, 468 P.2d at 160).
 
 
 18
 Plaintiff contends Beck is distinguishable because policy language there specifically stated that the automatic insurance provision would apply only if no other policy was applicable to the automobile. However, the court in Beck did not rely on this limiting language. In Northern Assurance Co. of Am. v. Farm Bureau Mut. Ins. Co., 249 Kan. 662, 822 P.2d 45, 47-48 (1991), the court held that the automatic insurance provision terminated once specific and separate insurance was issued on an undescribed vehicle, although there was no policy language precluding other insurance coverage. In so doing, the court relied on Bramlett, 468 P.2d at 160. See also Cook v. Suburban Casualty Co., 54 Ill.App.2d 190, 203 N.E.2d 748, 751 (1964) (once specific insurance is purchased on newly acquired vehicle, it is no longer a newly acquired vehicle and automatic insurance coverage terminates). Given the broad language in Beck, we believe Colorado would similarly hold that an automatic insurance provision terminates when new insurance is attained.
 
 
 19
 That does not end the matter here, however. There is considerable question whether the Fireman's Fund policy became effective. If it did not, and Mr. Barnard had not been killed, he still would have had time within either grace period to notify Avemco he wanted coverage to continue, or to procure other coverage.
 
 
 20
 In Alabama Farm Bureau Mut. Casualty Ins. Co. v. Ware, 365 So.2d 1240 (Ala.Civ.App.1979), a case with facts analogous to those in this case, the court interpreted a clause in an insurance contract which terminated the automatic coverage for newly acquired vehicles once "other collectible insurance" was purchased. The court concluded that an application for new insurance on a newly acquired vehicle does not terminate automatic coverage under the existing policy until the new policy is countersigned and issued. Id. at 1244. The court determined that because an application for insurance did not constitute a "meeting of minds and thereby a resulting contract," it would not be considered collectible insurance. Id.
 
 
 21
 We are persuaded Colorado would adopt this reasoning. If the purpose of an automatic insurance provision is to provide coverage when an owned vehicle is not yet covered by a new insurance policy, it only makes sense that the insured should have the entire grace period to actually secure other coverage. Our focus thus moves from whether the Fireman's Fund policy terminates Avemco's liability under the automatic insurance provision for newly acquired aircraft, and becomes whether Mr. Barnard actually obtained other collectible insurance specifically describing the Cessna 340. We agree with plaintiff that the district court's premature affirmative answer to this question is in conflict with its conclusion that this constituted a disputed issue of material fact precluding a summary judgment award to Fireman's Fund.
 
 
 22
 Because it is unclear whether the Cessna 340 is actually covered under the Fireman's Fund policy, it is not possible to decide whether the Avemco coverage terminated. Because the facts relevant to a determination of Avemco's liability under its automatic insurance clause remain in dispute, the issue was inappropriate for summary judgment disposition.[2]
 
 
 23
 The judgment of the District of Colorado is REVERSED, and the cause is REMANDED for proceedings in conformity with this opinion.
 
 
 
 *
 The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 Due to our conclusion that material issues of fact remain which preclude a grant of summary judgment as to Avemco's liability, it would be premature for us to reach plaintiff's issues of whether the Cessna 340 is a "replacement" or "additional" aircraft under the terms of the automatic coverage provision